UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL A. BORDERA and STACY D. BORDERA, | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 2:24-cv-00130-LEW |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | ) | |
| Defendant | ) | |

**ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

In this diversity case, choice-of-law rules are potentially determinative of the Defendant's liability to the Plaintiffs for underinsured motorist coverage following an automobile accident in Maine. Plaintiffs Michael and Stacy Bordera contend that an exhaustion precondition that their automobile policy imposes on the recovery of underinsured motorist coverage cannot be enforced by Defendant United Services Automobile Association ("USAA") because the provision is inconsistent with Maine law; whereas USAA contends that the precondition is enforceable because it is consistent with Maryland law and the policy was issued to the Borderas in Maryland, where they live and garage the covered automobile. The matter is before the Court on the parties' cross-motions for partial summary judgment on the choice-of-law issue. Pl. Mot. (ECF Nos. 48); Def. Mot. (ECF No. 50). For the reasons that follow, I conclude that Maryland law controls this particular coverage dispute, without prejudice to the Borderas contention that the

doctrine of estoppel can be enlisted to preserve their claim for underinsured motorist coverage under the USAA policy.

## BACKGROUND

On June 26, 2015, Michael and Stacy Bordera were driving their automobile while on vacation in Maine when they were involved in an accident on the Maine Turnpike. Stipulated Statement of Facts ¶¶ 12-13 (ECF No. 47). The accident was caused by another driver's negligent operation of the other automobile involved in the accident. *Id.* ¶ 21. That driver's insurance policy provided coverage up to $100,000 per claim, with an aggregate of $300,000. *Id.* ¶ 17. The Borderas brought an action against the other driver in York County Superior Court and eventually settled their claims against the driver and her insurer for $70,000 each, for a total of $140,000. *Id.* ¶¶ 18-19.

The Borderas are residents of the State of Maryland. *Id.* ¶¶ 1-2. They also resided in Maryland on the date of the most recent policy renewal that preceded the accident.[1] *Id.* ¶ 7. The policy covers a particular vehicle that the Borderas garaged in Maryland. *Id.* ¶ 10. The policy's declarations page states that it is a "MARYLAND AUTO POLICY" (ECF No. 47-1 at 7) and other policy information indicates that the policy premiums were determined in part based on issuance to and coverage of Maryland residents/drivers (*id.* at 11).

Following the accident and through the resolution of the action against the other driver, the Borderas were periodically in contact with USAA. Stip. ¶¶ 22-23, 25. The

[1] When he first obtained the policy at issue, Mr. Bordera did not live in Maryland. Stip. ¶ 29. However, there is no indication that he lived in Maine.

Borderas obtained from USAA a letter consenting to their settlement. *Id.* ¶ 26. After settling with the other driver and her insurer, the Borderas made a demand for underinsured motorist coverage under their policy with USAA. *Id.* ¶ 27. USAA denied the claim.[2] *Id.* ¶ 33.

USAA is a reciprocal interinsurance exchange incorporated in Texas, where its principal place of business is also located. *Id.* ¶ 20. The Borderas' insurance policy did not contain any choice of law provision. *Id.* ¶ 31. Copies of the USAA policy and renewal notices are electronically delivered to Mr. Bordera in the documents/inbox section of his USAA account and are not physically delivered to him in Maryland. *Id.* ¶ 30. All automobile insurance premiums paid by the Borderas are paid by automatic withdrawal from the USAA bank account. *Id.* ¶ 32.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (internal citations omitted). In reviewing a motion for summary judgment, I ordinarily must review the record in the light most favorable to the nonmoving party and grant to that party the benefit of all reasonable

[2] Although the parties' stipulations do not mention it, their motions papers indicate that the USAA policy includes an exhaustion provision related to the availability of underinsured motorist coverage. This provision requires the insured to exhaust the coverage available from the at-fault, underinsured motorist's insurance policy in order to obtain underinsured motorist coverage from USAA. The exhaustion provision is consistent with Maryland law but not Maine law. Pl. Mot. at 4; Def. Mot. at 3.

factual inferences that can be drawn therefrom. *Id.* Here, however, the facts are stipulated or appear on the face of policy documents and, as explained below, the question presented is to be determined as a matter of law.

"A federal court sitting in diversity jurisdiction must employ the choice-of-law principles of the forum state." *Auto Europe, LLC v. Connecticut Indem. Co.*, 321 F.3d 60, 64 (1st Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941)). In Maine, the application of choice-of-law rules presents an issue of law for the court to decide. *See Aldarraji v. Alolwan*, 355 A.3d 733, 737 (Me. 2026). And when an insurance contract lacks a choice-of-law provision, Maine courts look to the Restatement (Second) of Conflict of Laws for guidance. *Auto Europe*, 321 F.3d at 65 (citing *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 918 (Me. 1983), *overruled on other grounds, Peerless Ins. Co. v. Brennon*, 564 A.2d 383 (Me. 1989)). Specifically, Maine courts look to Sections 188 and 193 of the Restatement, which advise:

> The rights and duties of the parties . . . are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the parties.
>
> Restatement (Second) of Conflict of Laws § 188(1).
>
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* § 193. In short, the forums' respective relationships to the parties, their transaction, and the principal location of the insured risk are of primary concern.

The parties, their transaction, and the principal location of the insured risk all favor

the application of Maryland law over Maine law. Neither party is a Maine resident. Their transaction, a contract of insurance, has no tie to Maine. The contract is more logically tied to Maryland, where the insureds reside and where the subject automobile is or was garaged. Moreover, "the principal location of the insured risk during the term of the policy" was by no means Maine. The only sensible "principal location" in this context is Maryland, for the reasons already given. That conclusion aligns with the natural expectations of anyone who seeks uninsured automobile insurance, and especially for a person who resides in the same state in which the automobile is garaged. It also aligns with the natural expectations of insurance companies, which typically must write policies for customers residing in particular states to ensure compliance with state law.

Against these natural expectations and contract law guides, the Plaintiffs argue that when it comes to insurance coverage for a chattel that moves from location to location, the principal location of the insured risk presents a more challenging question. They observe that the language of section 193 imposes a qualifier of its own on the principal location rule, *viz*.: "unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." Pl.'s Mot. at 5. In their view, the "particular issue"—the conditions associated with their ability to access underinsured motorist coverage—should be tied to whatever state they are passing through when they are in an accident with an at-fault motorist who happens to be underinsured. They argue that this is reasonable since their coverage under the policy applies nationwide. *Id.* at 5-6. As they see it, automobile insurance covers a risk of loss that has no principal location and

therefore the choice-of-law should migrate with the automobile.

I find that this argument flies in the face of natural expectations and disregards entirely the significance of the modifier "principal" as it applies to the location of the risk. Most motorists appreciate that their home state is first in order of importance when it comes to the risks of loss.[3] Moreover, the fact that automobile insurance coverage travels with an automobile has no special significance when it comes to determining which state's laws supply the rules of decision on matters concerning the legality of the insurance contract's provisions. Allowing the applicable law to roam from state to state with the automobile would undermine predictability for both the insurer and the insured. Insurance coverage is secured in advance for planning against foreseeable risks. The terms and conditions of a policy ordinarily should not change depending on the location of a particular occurrence, particularly where the parties to the resulting dispute are the parties to the insurance contract. Where, as here, there is no choice-of-law provision, contract interpretation disputes between the insurer and the insured should be governed by the law of the state in which the policy holder resides, in which the policy is issued or renewed, and/or in which the automobile is garaged (all three of which coincide in this case).[4]

But assuming for the sake of argument that the Plaintiffs' challenge to the "principal

[3] Conventional wisdom holds that most accidents happen close to home.

[4] The Plaintiffs argue in part that they are in a special category because they live in the "National Capital Region, . . . where it is a well-known fact that any driver could be in three jurisdictions with three separate sets of laws on any given day multiple times by simply crossing a river from or into Virginia, the District of Columbia, and Maryland." Pl. Mot. at 9-10. But this fact proves as much the opposite point, because motorists in this particular category should be especially interested in the certainty afforded by the insurance laws of their home state and, once informed, should shop for insurance coverage accordingly rather than leave matters to chance.

location" rule has merit, that would mean that the rule of decision would be drawn from the choice of law principles found in section 6 of the Restatement, as further specified in Section 188 of the Restatement:

> The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

Restatement (Second) of Conflict of Laws § 188(1). Before turning to section 6, section 188 also advises that some contacts worthy of consideration include:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

*Id.* § 188(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

Contrary to the Plaintiff's position, the quoted portions of Section 188 do not tip the balance in their favor. Here, the "transaction and the parties" are not localized to Maine. The transaction is an insurance contract between Maryland insureds and a Texas insurer. The parties, likewise, are local to Texas and Maryland, not Maine. The state with the most significant relationship to an automobile policy issued to Maryland residents is the State of Maryland. Maryland is the place of contracting, after all, since the Policy renews semi-annually in that state. Maryland is also the place of negotiation, assuming negotiations

were ever to take place concerning coverage or premiums. Maryland is, likewise, the place of performance. The Plaintiffs seek to secure underinsured motorist coverage in the aftermath of their journey to Maine. They do so from their residence in Maryland, where any performance would take place.[5] The location of the subject matter also points to Maryland. This is an automobile policy for Maryland residents and an automobile garaged in Maryland. Finally, concerning the domicile, residence, nationality, place of incorporation and place of business of the parties, none is in Maine. This final Section 188 factor also points to Maryland, particularly as USAA has undertaken to write and provide coverage to the Borderas, who are residents of Maryland, through a policy that would be subject to the insurance law of Maryland.

That leaves the general principles of section 6. Section 6 reads, in relevant part:

> [T]he factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6. Seriatim, the interstate system does not "need" for Maine to provide the rule of

[5] Venue might have been laid in Maryland on this contract dispute. 28 U.S.C. § 1391(b).

decision rather than Maryland when it comes to the conditions under which underinsured motorist coverage is afforded to Maryland residents; the "relevant policies of the forum" and "other interested states" are to the same effect, since Maryland in fact has a greater policy interest than Maine when it comes to Maryland issued policies and insureds; the "protection of justified expectations" points to Maryland law for all of the reasons previously discussed, since the Borderas are Maryland residents with a Maryland garaged automobile and a "Maryland Auto Policy"; the "basic policies underlying the particular field of law" have, likewise, already been discussed and lean in favor of Maryland law; and, finally, "certainty, predictability and uniformity" and "ease in the determination and application of the law" point most emphatically toward Maryland, where the policy was most recently reissued through the semi-annual renewal process.

## CONCLUSION

For the reasons indicated, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 48) is DENIED and Defendant's Motion for Partial Summary Judgment (ECF No. 50) is GRANTED.

As discussed at the March 12, 2026, hearing on the Motion to Disqualify Counsel (ECF No. 33), this partial summary judgment ruling has preceded the disqualification dispute because a choice-of-law ruling in favor of Maine law may have avoided the need to take up the matter of disqualification. Tr. of Hr'g (ECF No. 52). Obviously, avoidance is not possible given my ruling on the summary judgment motions. Consequently, the matter of disqualification is again before the Court, including the question of whether disqualification, if imposed, should occur ahead of discovery. *See* Order denying Motion

to Amend Scheduling Order (ECF No. 36). The Court requests that the parties confer and provide a status report on or before October 2, 2026, concerning the pending Motion to Disqualify and, specifically, whether the Court should determine that Motion on the existing briefs or, in light of this Order, based on supplemental briefs.

SO ORDERED.

Dated this 21st day of September, 2026.

/S/ Lance E. Walker
Chief U.S. District Judge